Judge Simpson
delivered the opinion of the Court.
Botts and Plathaway each exhibited a bill in chancery to subject to the payment of debts due to them by judgments against John L. Patton, upon which executions had been returned no property found, the estate of the defendant in the judgment, which they alleged, had been fraudulently, transferred by him to John McCorkle, and was held by the latter for his use and benefit, to prevent creditors from subjecting it to the payment of their debts.
Patton and McCorkle both denied all fraud in the transaction; and.as an additional ground of defence, relied upon the fact that Patton, since the complainant’s debts were created, had obtained a certificate of discharge as a bankrupt, and that all his estate had vested in his assignee, ' who (the complainants being required by the *453 Court to make him a party) was made a defendant in both cases. They also relied upon the two years limitation created by the act of Congress in relation to bankruptcy. The two suits were consolidated and tried together, and the decree rendered against the complainants dismissing their bills.
It appears that McCorkle had, a short time before the failure of Patton, obtained from him, by asssignment, two notes for one thousand- dollars .each, and also a bill of sale for a small negro boy. The fairness of the transaction as to one of the notes, seems- to be established by the testimony of several witnesses, but as it regards the other note and the slave, the consideration is proved alone by. Patton the debtor. His testimony was excepted to, but it was clearly competent. We do not, however, deem it sufficient to sustain the fairness of the transaction, as to the second note, in opposition to facts and circumstances appearing in the cause, that stamp upon it the mark of fraud and collusion.
In a suit that had been previously brought and dis- . missed by Botts, in which the complainant had alleged that McCorkle had obtained from Patton, by a fraudulent arrangement between them; an assignment of a note for one thousand dollars, McCorkle was called upon to state what property or debts he had- received from Patton, and to detail in full the transactions between them. In responding to that call both Patton and McCorkle denied that the latter had received from the former, either in notes or property, any thing except the note for one thousand dollars, when, in fact, the other note for one thousand dollars had been assigned, and -the negro boy sold, by Patton to McCorkle, previous to that time.
McCorkle, in the answer he filed in'these suits, attempts to account for and explain the misstatement contained in his answer in his first suit. But the explanation that he gives, instead of being satisfactory, rather proves that he intended his answer to be evasive. If he had added what he says was omitted, viz, *454 that he had not received any thing from Patton sine® the commencement of Botts’ suit, the answer would not have been responsive to the amended bill, which contained no charge that he had received property during the pendency of the suit, but required him to state how much money he had received from Patton, and how much in property notes and accounts, without any reference to the time of its reception, but evidently referring to the time of Patton’s failure, which had occurred before the suit was brought.
McCorkle’s means were very limited. He admits in his answer filed in Botts’ firstsuit, thathe was worth only about eight hundred dollars. He undertook the settlement of about that amount for Patton in consideration of the transfer of the note for one thousand dollars mentioned in that suit, and as Patton was indebted to him in the sum of two hundred dollars, or thereabouts, he had a motive in affecting the security of the debt due to himself, to take an assignment of that note and assume the payment of the other debts, for part of which he was then liable as surety. But we are not able to perceive any motive to induce him to undertake the payment of Patton’s debts, for which he-was not liable, to the amount of one thousand dollars more, and in consideration thereof to take a transfer of a debt due at. a subsequent period, that he appears not to have been able to collect for several years afterwards. Besides, being worth, according to his own statement, only about eight hundred dollars, the whole of that was absorbed in the purchase of a negro boy, and the payment he made for the tract of land he purchased, so that he had no means left to apply to the payment of Patton’s debts.
A consideration of these circumstances has induced the conclusion that the transfer of the other note fox-one thousand dollax’s.was fx-audulent. The evidexxt attempt to conceal the tx-ansfer of that note, and the fact that Patton and McCorkle have continued to live together ever since, tend to fortify that conclusion. As Patton proves that the negro boy. was sold to McCox-kle *455 in payment of a debt he owed him, the sale must be regarded as valid.
- A discharged' bankrupt is no longer hable for judgment at law, have been^ro'ved^te1" nor^is3 ^ny property or right m the hands of a fraudulent Iqtatyf liable in
That a bankrupt, before his discharge had made a fraudulentconveyance, willnot authorize the Chancellor to set aside the discharge, or to disregard it. Its validity can only be tested by an issue upon specific grounds stated, of unfairness or fraud in its obtention.
The question, however, as to the effect of Patton’s bankruptcy, and the limitation relied upon has to be disposed of.
As the debtor was a discharged bankrupt, and no longer liable for the judgments at law, the creditors i, ,. J . could not subject any ot his estate to the payment ot the debts. If he be not liable for the debts, McCorkle cannot be required to pay them by the creditors out of the estate in his hands, for that can be reached alone to . r _ , . ... satisty ration’s debts. As, therefore, the latter is discharged from the debts, and no longer liable for them, the creditors cannot proceed against his fraudulent transferee to obtain payment from him.
It is argued, however, that the bankrupt’s certificate of discharge, cannot have the effect here given to it, because of the fraud committed in this transaction. By the express provisions of the act of Congress, the discharge of the bankrupt is to have the effect of releasing him from all his debts, unless the same shall be impeached for some fraud or wilful concealment by him of his property, or rights of property, contrary to the provisions of that act. To avoid, therefore, the effect of a certificate of discharge, when plead and relied upon, as in this case, it must be impeached for fraud in obtaining it, and the grounds of its impeachment properly specified and alleged, which was not done.
It is also contended that the cause was prematurely heard, on the same day the plea was filed, in consequence of which, the complainant had no opportunity to file a replication, or an amended bill; in impeaching the discharge for fraud. The plea was filed on the day previous to that on which the cause was heard, and no objection having been made to a trial at that time, or any proposition made to file a replication to the plea, or for time for that purpose, there does not seem to be-any valid ground for this objection.
It is not necessary at this time to decide the effect of the statute of limitations on the right of the assignee *456 in bankruptcy to this estate in the hands of McCorkle, •or to determine whether or not the right to it vested in . him. Although a party to the suit, he filed no cross-bill, nor asserted any claim to it against McCorkle; the event, therefore, could not enter a decree in his favor, nor does the decree, in the present suit, prevent him from prosecuting a suit hereafter in his own name as assignee, if he'should think proper to do so.
An assignor in ¡bankruptcy, tho’ •a party to a suit in chancery between the creditors and the 'bunkrupt is not ."barred of his right as assignor where he does mot assert it, and it is not adjudicated upon.
A bill to set aside a decree for frauds, and is not properly a bill of review, & no writ of error ties to the opinion of the Court refusing leave to -file it as such.
-Boyd for plaintiffs,; Cord for defendants.
At the term subsequent to that at which the final decree was rendered, the complainants offered to file a bill of review impeaching the decree upon the ground of fraud. The Court overruled the motion, and the action of the Court upon that subject, as well as the^proceedings and decree in the consolidated suits, are questioned in the assignment of errors.
The bill offered, to- be filed, wTas not properly a bill of •review, and, therefore, there was no error in the Court an refusing the complainants leave to file it as such. As =an original bill, impeaching the decree for fraud, they have a right to file it, and prosecute the suit without leaveiof -the Court,.and, therefore, they are not prejudiced by the refusal-of. the Court to allow -them to file it, as a bill of review.
Wherefore, the decree is affirmed.