# Ebner, et al. v. Official Board of the Methodist Episcopal Church of Pineville.

(Decided April 20, 1926.)

## Appeal from Bell Circuit Court.

1. Appearance.—Filing general demurrer to petition was entry of appearance and operated to waive objection that summons was not properly served.
2. Pleading.—Under Civil Code of Practice, section 92, subdivision 2, objection of want of legal capacity to sue must be made by special demurrer, and general demurrer operates to waive such objection under subdivision 4.
3. Contracts.—Petition, showing on its face making, terms, and breach of contract and damages, sustained by reason thereof, is sufficient.
4. Contracts—Principal and Surety—Petitions, Alleging Contractor's Failure to Prosecute Building of Parsonage with Diligence, and Abandonment of Work Before Completion and Failure to Construct in Skillful or Workmanlike Manner, Held to Show Breach of Contract and Bond.—Where contract for building parsonage provided that contractor supervise construction and purchase of material and construct building in conformity with plans and specifications, allegations that he did not prosecute work with any diligence, abandoned it before completion, and did not construct it in skillful or workmanlike manner, held to show breach of contract and bond assuring its faithful performance.
5. Judgment—Refusal to Set Aside Default Judgment, Entered After Defendants' Attorneys had Withdrawn from Case, Held Not Abuse of Discretion.—Refusal to set aside default judgment against contractor and surety on his bond, entered after attorneys for surety had withdrawn from case, held not abuse of discretion, in absence of showing that surety was not aware that attorneys were no longer representing it or that sufficient diligence was used.

JAMES M. GILBERT for appellants.

JAMES S. GOLDEN for appellee.

Opinion of the Court by Commissioner Hobson—Affirming.

In July, 1923, the Official Board of the Methodist Episcopal Church of Pineville, Kentucky, entered into a written contract with R. J. Ebner to build a parsonage upon its lot adjoining the church. The contract provided that Ebner should take charge of the construction of the building, employ and supervise all the labor and with

plaintiff's assistance buy the material to construct the building in conformity to the plans and specifications, which were made a part of the contract. The maximum cost of the building was not to exceed $6,100.00. In case the cost did not exceed $6,100.00 then Ebner was to receive 5% commission for his services, but in no event should the cost of construction and the commission exceed $6,100.00. The work on the building was to begin immediately and to be prosecuted to completion with reasonable diligence. Ebner gave bond with the National Surety Company as his surety in the sum of $3,050.00 that he would well and faithfully perform the contract. On September 16, 1924, the board filed this action against Ebner and the surety company on the bond, setting out the facts above stated and alleging that Ebner did not supervise the labor in the construction of the building or give his advice or assistance in purchasing the material and did not construct the building in conformity with the plans and specifications, either as to workmen or material; that by reason of his breach of the contract the building cost the plaintiff a sum largely in excess of $6,100.00; that Ebner did not prosecute the work with reasonable or any diligence, and in fact left and abandoned it before the building was completed, and did not construct the building in a skillful and workmanlike manner and devoted practically all, if not all, of his time to other building contracts; that he violated and failed to carry out his contract as above set out, to the damage of the plaintiff in the sum of $2,995.00, no part of which has been paid and for which judgment was prayed. The summons on the petition was served on September 17, 1924. On September 23, the National Surety Company wired N. R. Patterson, a local attorney, to enter its appearance in the case, saying a letter followed. On September 25, Patterson filed a demurrer to the petition pursuant to the telegram. After he had filed the demurrer he received a letter from the surety company inclosing him the summons in the action and concluding with these words: "We expect you to defend us at the expense of our principal." Patterson wrote them acknowledging the receipt of their letter, declining to be employed at the expense of Mr. Ebner, and concluding with these words: "Our advice to you now is that we are not representing you any longer." The letter properly stamped and addressed was mailed on September

27th, 1924, and no reply was received to it. Thus things ran along until January 13, 1925, when the court over-ruled the demurrer to the petition. On January 14th, Patterson and his partner appeared in court and moved the court that they be permitted to withdraw as attorneys for the defendant and the court sustained the motion. On the same day the plaintiffs moved the court to take their petition for confessed. The motion was sustained, and on January 30, 1925, the case coming on to be heard before a jury, there was a verdict and judgment in favor of the plaintiffs for $2,995.00. On February 7, 1925, the surety company wrote N. R. Patterson saying that under date of January 16, 1925, they wired Ebner their consent to employ Patterson at his expense to enter answer on its behalf in the case and asking him to send it a copy of his answer. On February 13, Patterson answered this letter saying he did not desire employment at Ebner's expense and declined to take the case. On February 19, 1925, the surety company wrote to James M. Gilbert, another local attorney, telling him that Patterson had filed notice of appearance for it, but declined to represent it at the expense of Ebner and requesting him to take the necessary steps to protect its interest. Gilbert received this letter on Saturday, February 21, and at once wrote the surety company telling it that a default judgment had been entered in the case and directing it to immediately prepare affidavit stating that Mr. Patterson was thought to be representing it and setting out when it had learned that he had withdrawn from the case and stating the reason for not defending the action. The letter was sent by special delivery. When Gilbert was thus employed he found this situation: The circuit judge on January 30 received information that his daughter was sick; January 31 was the last day of the term. By reason of the necessity for the judge to go to see his sick child the court was adjourned on the evening of the 30th of January and no court was held on the 31st. The orders were written up after the judge left, but had not been signed by the judge at the time Gilbert was employed. On Monday, February 23, Gilbert went to the clerk's office and found the judge there before the court was called to order. He was preparing to sign the orders but had not signed the judgment in this case. Gilbert told the judge the facts and

asked that the judgment be set aside, and filed with the clerk a motion to set it aside. The clerk entered this motion as though entered on January 31, the last day of the preceding term. When the attention of the court was called to this he had the order set aside and had the motion entered as made on Monday, the first day of the February term, when it was in fact first presented in the clerk's office. The judge had signed the orders in the clerk's office before he went upstairs to open the court. Gilbert tendered an answer to the petition, numerous affidavits were filed for and against the motion and on March 13, 1925, the motion, being heard on all the evidence, was overruled, to which the defendant excepted and prayed an appeal, which was granted.

It is insisted that the return on the summons is insufficient as to the surety company, but by filing its general demurrer it entered its appearance to the action and it cannot now complain that the summons was not properly served.

It is also insisted that it does not appear that the official board of the church is an incorporated body or that it has capacity to sue as the members of the board are not made parties plaintiff. But by section 92, subsection 2 of the Code, the objection that the plaintiff has not legal capacity to sue must be made by a special demurrer. No special demurrer was filed. The general demurrer was a waiver of this objection under subsection 4 of section 92, L. & N. R. R. Co. v. Herndon, 126 Ky. 589.

It is true that it is provided by the contract that the cost of the building and Ebner's commission shall not exceed $6,100.00, and that if the building costs more than $6,100.00, Ebner should receive no commission. But the loss of commission is not the only liability on the bond. By the bond he and his surety undertook that he would faithfully perform the contract and if he did not faithfully perform the contract there was a breach of the bond, for which he and his surety were liable.

The rule is that a petition is sufficient which shows on its face the making of the contract, the terms of the contract, the breach of the contract and the damages sustained by reason thereof. The petition in this case sufficiently sets out these facts and charges that by reason thereof the plaintiff sustained damages in the sum

of $2,995.00, which are wholly unpaid. While it is true that the contract does not provide that Ebner was to give his whole time to the building of the house, it does provide that he is to supervise the labor in the construction of the house and the purchase of the material and construct the building in conformity with the plans and specifications, and it is alleged that he did not prosecute the work with any diligence and abandoned the work before the building was completed and did not construct it in a skillful or workmanlike manner. These facts, well averred in the petition, show a breach of the bond. The petition is, therefore, sufficient to sustain the verdict of the jury and the judgment rendered pursuant to it.

Without passing upon the technical objections to the motion the court concludes that the circuit court upon the whole case did not abuse a sound discretion in refusing to set aside the judgment. It was uncontroverted that on September 27, Patterson wrote the surety company advising it, "We are not representing you any longer," and that after this letter he heard nothing from it until its letter of February 7. It also was undisputed that Mr. Gilbert wrote it on February 21 that a default judgment had been entered and directed it to immediately prepare affidavits stating that Mr. Patterson was thought to be representing it and setting out when it had learned he had withdrawn from the case and stating the reasons for not defending the action. This letter was sent by special delivery. The motion to open the judgment was not heard by the court until March 13, and on the hearing no showing was made that the company had not received Patterson's letter of September 27, or had any reason thereafter to suppose that he was representing it or had taken any steps looking to a defense in the case until its letter to Patterson of February 7. No application was made to the court for further time to get evidence on this subject, and there was nothing before the court explaining what appeared to be the settled purpose of the surety company to leave to Mr. Ebner the expenses of defending the action. Under such circumstances the motion to set aside the default judgment was properly overruled.

Judgment affirmed.