Jacob G. Grossberg and Albert E. Icely, Appellees, v. Sadie J. Knight, Appellant.

Gen. No. 35,749.

Opinion filed April 25, 1932.

Hume & Kennedy, for appellant.

Jacob G. Grossberg and Albert E. Icely, *pro se.*

Mr. Presiding Justice O'Connor delivered the opinion of the court.

A decree was entered in favor of Jacob G. Grossberg and Albert E. Icely, the petitioners, practicing lawyers at the Chicago bar, decreeing them an attorney's lien of $3,000 on a deposit belonging to the defendant in a Chicago bank, and the defendant appeals.

The record discloses, in substance, that John Knight, Sr., his son, John Knight, Jr., and his daughter, Sadie J. Knight, the defendant, had a deposit of $22,000 in a Chicago bank. It was what counsel designate as a survivorship account, and on March 25, 1929, the father died and his son, John, Jr., was appointed executor of his estate. Afterward certain of his heirs filed a petition in the probate court of Cook county, seeking to compel the executor to inventory the $22,000 deposit as assets of the estate of John Knight, Sr., deceased. John Knight, Jr., retained the petitioner Albert E. Icely to represent him, and later Jacob G.

Grossberg became associated with Icely and both represented John Knight, Jr., individually and contended that the $22,000 was not an asset of the estate, but that it was a survivorship account belonging to John, Jr., and Sadie, his sister, the defendant. This case was tried in the probate court of Cook county and the petition of the heirs was dismissed, and on appeal to the circuit court of Cook county there was a trial *de novo,* with the same result. Subsequently there was an appeal to this court but it seems the appeal was dismissed. Afterward John Knight, Jr., died; and it is conceded that his sister is entitled to the $22,000, now increased to $24,000.

February 13, 1931, Grossberg and Icely filed their petition in the circuit court of Cook county praying that they be decreed to have a lien on the money deposited in the bank for the amount of their fees, $3,000. Their right to this was contested and on a hearing the court decreed in favor of the complainants.

The defendant contends that the decree was wrong and should be reversed because in no view of the case are the petitioners entitled to an attorney's lien, under the statute. Section 1, par. 13, p. 157, Cahill's 1931 Statutes, provides: "That attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action. *Provided, however,* such attorneys shall serve notice in writing, which service may be made by registered mail, upon the party against whom their clients may

have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action, and such lien shall attach to any verdict, judgment or decree entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of services of the aforesaid notice.''

The question for decision calls for the meaning of the statute just quoted. It will be noted that the statute gives attorneys a lien for services rendered by them to their clients ''upon all claims, demands and causes of action, . . . which may be placed in their hands by their clients for suit or collection, . . . such lien shall attach to any verdict, judgment or decree entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action.''

We think it clear in the instant case that the defendant, even if it be assumed she was a client of the petitioning attorneys, did not place in the attorneys' hands any claims, demands or causes of action for suit or collection. The most that can be said under the above assumption is that she retained the attorneys to defend a claim made against her by the heirs in the probate and circuit courts; and we are further of the opinion that when the attorneys defeated the claim it cannot be said that they ''recovered'' any ''property or money'' for the defendant. The statute gives the attorneys a lien ''to any money or property . . . recovered, on account of such suits, claims, demands or causes of action.'' We think it obvious there was no recovery within the meaning of the statute in the instant case.

Sustaining this conclusion are the cases of *Bremer v. Lake Erie and Western R. Co.,* 317 Ill. 590; *Wilson v. House,* 10 Bush (73 Ky.) 406; *Atchison v. City of Owensboro,* 114 Ky. 706.

In the *Bremer* case a locomotive fireman was killed in a railroad wreck in Vermilion county, Illinois. At that time he was a resident of Indiana; he had never been a resident of Illinois. The public administrator of Vermilion county filed a petition in the probate court of that county asking that an administrator of the deceased be appointed for his estate, consisting of the cause of action against the railroad company, and letters of administration were issued. The administrator then obtained authority from the probate court to employ counsel to institute suit against the railroad company. His counsel then served notice on the railroad company of their employment and that they claimed a lien under the statute. An administrator was appointed in Indiana by the courts of that State, where the deceased resided at the time of his death, and he settled with the railroad company. The attorneys then filed a petition in the Vermilion county case to enforce their lien. The Supreme Court, in holding that they had no lien, after referring to the statute said (p. 583): "This statute gives attorneys at law a lien upon all claims, demands and causes of action, including claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon between such attorneys and their clients, or in the absence of such agreement, for a reasonable fee, which lien shall attach to any verdict, judgment or decree entered, and to any money or property which may be 'recovered on account of such suits, claims, demands or causes of action, from and after the time of the service of the notice of their lien.'

"Whatever else may be said of this claim, it is evident that appellants are not entitled to recover under the Attorneys' Lien act. In the first place, the lien is made by the statute to attach to a verdict, judgment or decree entered, or to any money or property

which may be recovered on account of the suit, claim or demand. . . . No hearing has been had on the suit filed by them in Vermilion county."

In the *Wilson* case (73 Ky. 406), the statute giving the attorneys a lien provided "a lien upon any chose in action, account, or other claim put into their hands for suit or collection, and upon judgments in actions prosecuted by them to recovery where the judgment is for money." And the Supreme Court of Kentucky held that the statute did not give the attorneys a lien "because there was no chose in action or other claim put into appellee's . . . hands for collection, and no judgment for money was recovered." The court there cited a later act of the statute which provided that when an attorney was employed by either plaintiff or defendant in any action "which is prosecuted by him to recovery he shall have a lien upon any property, either personal or real, which may be recovered in such action for the amount of his fee." And the court held that the attorney had no lien because no property, real or personal, was recovered; that all the attorney did was to resist the confirmation of the sale of property.

And in the *Atchison* case (114 Ky. 706), a proceeding was instituted by the tax collector to compel banks of that city to pay taxes. Later the banks obtained an injunction, litigation followed, and the city, through the efforts of its counsel, was successful and the tax collected. The city attorney claimed a percentage of the amount of the tax collected, under a statute which provided that in addition to his salary he should be paid 10 per cent "upon all sums recovered and collected by him for the city." It was held that the attorney's services were rendered in defending the injunction suits brought by the banks and therefore there was no recovery within the meaning of the statute. The court there said (p. 714): "The term 'recover' has a well-defined meaning in the law, and

this meaning has been the matter of adjudication by this court prior to the adoption of the present statutes. Under the statute giving an attorney a lien for money or property, which may be recovered in an action prosecuted by him, it was held that the defendant's attorney, who merely defeated a judgment sought against his client, had no lien on the fund which was in controversy. *Wilson v. House,* 73 Ky. 406.''

The petitioners cite a number of authorities which they contend sustain the decree of the court awarding them their lien for their fees. Some of these cases are *Mackall v. Willoughby,* 167 U. S. 681; *Borg v. Kawin & Co.,* 190 Ill. App. 62; *Chicago Junction Ry. Co. v. Leitch,* 215 Ill. App. 67; *Hatfield v. Richmond,* 177 Ky. 183.

The *Mackall* case (167 U. S. 681), involved the construction of a contract between a client and his attorney by which the attorney was to be paid a certain fee for services to be rendered. The litigation involved some real estate in Washington, D. C. A party was in possession of the property, and through the litigation conducted by counsel he was required to remove from part of the property and the client thereby regained possession of it. And it was held that this was a ''recovery'' of property within the meaning of the contract. The court there said (p. 687): ''We think the word 'recovered' should not be so restricted in its meaning. There is no reason why the agreement should not be liberally construed. Its object was to give Willoughby a lien on the property which might be recovered—that is to say, secured or realized —by and through the litigation conducted by him, offensive and defensive. . . . Having as a matter of fact, through success . . . settled the title to a very valuable part of the lot, and enabled Mackall (the client) to retake peaceable possession thereof without further litigation . . . we think his lien attached thereto.'' While the wording of the contract

there involved and our statute is not the same, yet we are of the opinion that in the *Mackall* case there was in effect a recovery of part of a lot from which Mackall had prior to the litigation been excluded.

In the *Borg* case (190 Ill. App. 62), an attorney was awarded a lien and the amount ordered to be paid into court. It was contended that the order should not have required the amount paid into court, and the court said that they were unable to see how this affected the defendant in that case. We think it clear that this case is no authority for the petitioners' contention.

In the *Leitch* case (215 Ill. App. 67), the court allowed an attorney who defended in a condemnation suit a lien. There, a railroad company had brought a condemnation suit and the owner employed counsel to defend. Afterward the railroad company dismissed its suit and under section 10 of the Eminent Domain Act, Cahill's St. ch. 47, ¶ 10, was required to pay the defendants costs and reasonable attorneys' fees and this fee was paid into court. Counsel was given a lien upon that money. We think it equally obvious that this case is not in point. The money was there paid by the plaintiff into court. There are no such facts in the instant case. The petition filed by the heirs seeking to have the money in the bank inventoried was dismissed.

In the *Hatfield* case (177 Ky. 183), an attorney was given a lien for $150 on a tract of land which was awarded to the attorney's client on his client's counterclaim. The court there said (p. 185): "It will thus be seen that Hatfield, although a defendant in the action of Richmond, was seeking by counterclaim to be adjudged the owner of all the land in dispute. . . . We perceive no difference between the right of an attorney to his statutory lien who represents a defendant who successfully asserts title to the property by way of counterclaim and the right of an attorney to a

statutory lien who successfully represents the plaintiff who is seeking to recover property on his petition.'' We think it clear that the facts in the *Hatfield* case are in no way analogous to the facts in the case before us.

We hold it was error to decree a lien on the money in the bank.

We are further of the opinion that all the evidence shows that counsel were not retained by the defendant but by her brother John Knight, Jr., representing him alone, and that he was to pay them their fee for the services which they performed.

Icely, one of the petitioners, testified that John Knight, Jr., had been a client of his for some years prior to the time in question; that the petitioner Grossberg became associated with Icely in attending to a number of legal matters for John Knight Jr., and that Knight asked the witness ''what I would charge him to represent him in defending his interest in that fund . . . I told him I would charge him 25 per cent of whatever interest he had in that fund as fees to represent him,'' and that afterward on a number of occasions Knight stated that the fee of $3,000 was satisfactory to him.

Grossberg testified that he had conferences in the probate court room with John Knight and the defendant Sadie Knight, in reference to the probate court matter; that he thought she was in his office but once; that he did not talk about the fee to anyone but left it to Mr. Icely. It further appears that in reply to a letter from the defendant in which she stated that he had never represented her, the witness replied that ''while technically speaking this is true,'' that he only represented her brother John, yet his work was for the personal benefit of herself as well as her brother.

The record further shows that when the case was called in the probate court the witness, in response to a question put to him by the court as to whom he

represented, replied that he represented Mr. Knight individually. It will be noted that neither of the petitioners makes any reference to being retained by the defendant, Sadie Knight.

But the petitioners further contend that since the services performed by them were for the benefit not only of John Knight, but of his sister, the defendant, Sadie Knight, she is liable for the services in protesting and safeguarding the funds in the bank ''even if she had not expressly authorized, approved and ratified the services rendered by the petitioners.'' We think this contention is unsound under the facts in this case. The evidence shows that John Knight retained the petitioners to represent him and that he agreed to pay them for their services. The fact that the services they performed inured to the benefit of the defendant, Sadie Knight, would not make her liable because she had a right to retain any counsel or none at all, as she saw fit.

The decree of the circuit court of Cook county is reversed and the cause remanded with directions to dismiss the petition.

*Reversed and remanded with directions.*

McSurely and Matchett, JJ., concur.